### George W. Roper v. Elizabeth Magee et al.

Plaintiff sued on a *quantum meruit*, and afterwards amended his petition and set up a written contract. Defendant excepted to the amendment on the ground, that it changed the nature of the action  *Held:* The proceedings which took place from the joinder of issue to the filing of the amendment and exception, amounted to a waiver or abandonment of any objection which the defendants would have had to the form of the action. If defendants wished to avail themselves of the written agreement as a bar to the action on the *quantum meruit*, it should have been specially pleaded for that purpose.

The appointment of experts by the court, *exparte* and without notice to the parties, is null. C. P. 446

Experts cannot act at the request of one party, without giving notice to the adverse party. C. P 450.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Cohen*, for plaintiff. *A. Hennen*, for defendants and appellants.

Voorhies, J. This action was brought by the plaintiff on a *quantum meruit*, to recover the sum of $630, alleged to be a balance due him as the price of materials and of work and labor done in building a dwelling house, kitchen, cistern, fence, &c., for the defendants.

In answer, the defendants, after pleading the general issue, aver, that on the 27th of August, 1846, they contracted with the plaintiff for the building of a house according to specifications and a plan annexed to the contract; that on the 16th of January, 1847, a change was made in the same, owing to errors and neglect of the plaintiff, as specified in a paper annexed to their answer. They further aver, that said house was not constructed and finished, nor delivered within the time stipulated, in accordance with said contract; in consequence of which they have suffered $600 damages, which they claim in reconvention.

The answer was filed on the 8th of July, 1848; and on the 23d of January, 1849, the cause was referred to experts by consent of the parties, *John Sewell* being appointed on the part of the plaintiff, and *Hugh O. Ames*, on that of the defendants, with instruction "to examine the buildings mentioned in the pleadings, and to state how far they were built in conformity with the contract filed by the defendants, and what damages, if any, the defendants had suffered for the violation of the said contract, and to report within ten days to the court, the result of their examination." On the 29th of the same month, *Alexander Baggett* was appointed to act as umpire in case of disagreement of the experts. On the 31st of March, 1849, *H. O. Ames* filed a report. No further proceedings were had in the cause, as appears from the record, until the 9th of January, 1850, when *John Rogers* was appointed umpire in the stead of *Baggett*, in consequence of the absence of the latter from the city. On the 18th of March, 1850, *Sewell* filed a report as one of the experts. *Rogers*, as umpire, filed a report on the same day, in which he declares having carefully examined the buildings in question, together with the plan and specifications, and the separate reports of the experts. That there were some small defects in the interior of the house, caused by the settling of the chimneys, to which new houses are subject, and not imputable to the builder as a fault, and that the defects inside could be made good for about $20. The additional work done in consequence of alterations made in the work, which was nearly completed, he considered to be worth $250 more than that contracted for. These

reports were offered in evidence by the plaintiff and objected to by the defendants' counsel, on the ground, that *Ames*, appointed on the part of said defendants, had not been qualified. The court sustained the objection, and ordered a continuance of the cause; and by consent of parties, the subject matter of dispute was again referred to the same experts, and *Baggett* was reappointed as umpire. On the 14th of May, 1850, the plaintiff filed a supplemental petition, alleging that the buildings mentioned in his original petitions were constructed by him under the contract annexed to the defendants' answer, but in consequence of changes made in the original plan by the defendants' orders, the price of the work done was worth more than that stipulated for. The petition concludes with a prayer, that the defendants be condemned to pay the plaintiff *in solido* the sum claimed in the original petition.

This amendment was excepted to by the defendants' counsel on the ground, that it altered the plaintiff's demand. The exception was overruled on the 13th of January, 1852.

We do not think the Judge *a quo* erred. The proceedings which took place from the joinder of issue to the filing of the amendment and the exception in the case, as already noticed by us, clearly amounted, in our opinion, to a waiver or abandonment of any objection which the defendants would have had to the form of action. If they wished to avail themselves of the written agreement, as a bar to the action on a *quantum meruit*, it should have been specially pleaded for that purpose, and insisted upon.

On the 27th of December, 1851, a rule was taken on *Ames* to show cause why he should not be sworn as an expert according to law, &c. On the trial of the rule, exparte on the plaintiff's showing, by affidavit, that *Ames*, the expert appointed on the part of the defendants, declined to act as such, the court ordered *George Purves* to be appointed in his place. On the 19th of May, 1853, the experts filed a report. To a rule taken by the plaintiff for the homologation of this report, the defendant filed an opposition on the following grounds: that the appointment of the experts being made exparte and without notice to the defendants, was null and void; that the proceedings of the experts are null and void, because they acted exparte without giving notice to the defendants; that said experts did not examine the premises together, but separately, and did not notify the defendants thereof; and that their report is false, erroneous and unjust, as is apparent from the face of the proceedings, and should be set aside, &c.

On the trial of the opposition, *H. O. Ames* testified as a witness for the defendants, that he visited the property; that the report signed and filed by him on the 31st of March, 1849, is correct; that he was lately called upon by the plaintiff to act the second time as expert, but his business prevented him from doing so; that he had never been notified of the report to be made by *Purves* and *Sewell;* and that he was totally unacquainted with all the proceedings had since his first report, and had always been present in the city. *Sewell*, also examined for the defendants, testified that the report was made without having notified the defendants of it. He met the plaintiff by previous appointment, who pointed out to him the buildings, which he examined with the plan and specifications. When builders are appointed as experts, they do not consider it obligatory to go together or to notify the defendant or his counsel; this is not usual. He had been appointed as expert three or four times, but had knowledge of three or four hundred cases, more or less; he knew the usage,

"from the statement of the parties who made the *expertises* in the cases where he acted as expert"; he and *Purves* did not examine the premises together, but separately; he examined the premises but once, and that at the time he made the first report, which had been made a long time before the second; and objected to make another until a short time previous, having entirely lost sight of the first. The report of Mr. *Purves* having been submitted to him, and considering that it agreed nearly with his, as he supposed, and wishing to get rid of the matter, he agreed on the second report and signed it. He examined the premises in March, 1849, with the plan and specifications in his hands. The premises are occupied by the defendants.

On this state of facts, it was decreed that the report be homologated and made the judgment of the court. From this judgment, signed on the 10th of November, 1853, the defendants are appellants.

We think the Judge *a quo* erred. It appears to us that the first and second objection of the opposition filed by the defendants were well taken, and that the report of the experts should have been set aside. " When either experts, auditors of accounts, or judicial arbitrators, are to be appointed, each party shall name one, and a third shall be appointed by the court, to act as umpire, in case the two should not agree. If the parties, or either of them, neglect or refuse to appoint, the Judge shall name all three." C. P. 346. "After the documents in the cause have been placed in their hands, they shall, at the request of either of the parties, give to the adverse party at least three days previous notice of the time and place at which they intend to commence their proceedings, in order that such party may attend." C. P. 450. 15 L. 425.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be reversed; that the report of said experts be set aside, and that the case be remanded for further proceedings according to law; the appellee to pay the costs of this appeal.